# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KEITH CHARLES KNIPPEN, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 17-138 |
| NANCY A. BERRYHILL, ACTING COMMISSIONER OF SOCIAL SECURITY, | ) Magistrate Judge Lenihan<br>) ECF Nos. 15, 20 |
| Defendant. | ) |

## MEMORANDUM OPINION

**I.    Introduction**

Plaintiff Keith Charles Knippen ("Knippen") brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the Acting Commissioner of Social Security's ("Acting Commissioner") denial of his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 401-434, 1381-1383f, respectively. This matter is presently before the Court on cross-motions for summary judgment.[1] (ECF Nos. 15 and 20). The parties developed the applicable record through Social Security Administrative proceedings.[2] For the reasons that follow, Knippen's motion for summary judgment (ECF No. 15) will be denied, the Acting

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c)(1), the parties voluntarily consented to have the undersigned United States Magistrate Judge conduct proceedings in this case, including the entry of a final judgment. See ECF Nos. 18 and 19.

[2] All references to the administrative record (ECF No. 7) will be cited in the following format: (R. at xx).

Commissioner's motion for summary judgment (ECF No. 20) will be granted, and the Acting Commissioner's decision will be affirmed.

## II.  Statement of the Case

### A. Procedural History

Knippen filed his DIB and SSI applications in April 2013, alleging disability beginning on November 1, 2010, due to asthma, arthritis, depression, high blood pressure and a hernia. (R. at 146, 448). After Knippen's applications were denied, he requested an administrative hearing, which was held by Administrative Law Judge Perry-Dowdell ( the "ALJ") on September 11, 2014. (R. at 82-116). On December 3, 2014, the ALJ issued a decision finding that Knippen is not disabled. (R. at 146-161).

After receiving the ALJ's unfavorable decision, Knippen requested review by the Appeals Council. On August 5, 2015, the Appeals Council remanded the case to the ALJ for additional proceedings. (R. at 167-170).

Following remand, the ALJ held a second administrative hearing on January 12, 2016, at which Knippen appeared and testified while represented by counsel. (R. at 39-81). On March 25, 2016, the ALJ issued a decision finding that Knippen is not disabled. (R. 18-31). The Appeals Council denied Knippen's subsequent request for review on December 5, 2016, making the ALJ's decision the final decision of the Acting Commissioner. (R. at 1-3). The instant action followed.

B. **General Background**

Knippen was 46 years old on his alleged disability onset date, which is classified as a younger person under the regulations.[3] (R. at 30). While the administrative proceedings were pending, Knippen's age category changed to that of a person closely approaching advanced age.[4] (R. at 30). Knippen has a high school education through a general equivalency degree. (R. at 30, 139). He has past relevant work experience as an assistant manager, guest service team lead, customer service representative and salesman. (R. at 29, 138).

C. **Medical Evidence**

The ALJ's decision includes a detailed summary of the medical evidence pertaining to Knippen's physical and mental impairments. (R. at 24-29). Relevant medical evidence will be discussed in the Court's analysis of the issues presented in this case. See Section IV, infra.

D. **The ALJ's Decision**

The ALJ determined that Knippen engaged in substantial gainful activity during the following periods of time since his alleged disability onset date: January 2011 through November 2011; January 2012 through December 2012; and March 2013 through April 2013. (R. at 21). Nevertheless, the ALJ continued to review Knippen's claim because there was a continuous 12-month period during which he did not engage in substantial gainful activity. (R. at 21).

The ALJ found that Knippen suffers from the severe impairments of obesity, hypertension, asthma, arthritis of the shoulders, knees and elbows, lower back pain, anxiety and depression. (R. at 21). However, the ALJ found that Knippen's severe impairments, either alone or in

---

[3] A claimant who is under age 50 is classified as a "younger person." 20 C.F.R. §§ 404.1563(c), 416.963(c).

[4] A claimant who is 50-54 years old is classified as a "person closely approaching advanced age." 20 C.F.R. §§ 404.1563(d), 416.963(d).

combination, do not meet or equal the criteria of any of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Appendix 1"). (R. at 21-22).

The ALJ then assessed Knippen's residual functional capacity[5] ("RFC") and found that he is capable of performing light work[6] with a number of other non-exertional limitations. (R. at 23). Knippen is limited to standing and walking for about six hours and sitting for about six hours each in an eight-hour workday, he must be able to sit and stand every two hours, and he cannot perform bilateral overhead reaching. (R. at 23). In addition, Knippen is restricted to simple, routine and repetitive work that is performed in a stable environment where the work place and work process remains generally the same each day. (R. at 24). He also must avoid concentrated exposure to environmental irritants such as fumes, odors, dusts, gasses, poor ventilation, chemicals and extreme heat or humidity. (R. at 24). Finally, Knippen must have unscheduled breaks for five minutes every hour. (R. at 24). All of the foregoing limitations assessed by the ALJ are collectively referred to as the "RFC Finding."

The ALJ next concluded that Knippen could not perform any of his past relevant work, which was semi-skilled to skilled in nature, because it exceeds the RFC Finding's restriction to simple, routine and repetitive work. (R. at 29). However, based upon the vocational expert's testimony, the ALJ determined that Knippen is capable of performing other work that exists in significant numbers in the national economy, such as a retail marker, photocopy machine operator

---

[5] Residual functional capacity is defined as that which an individual still is able to do despite the limitations caused by his impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In assessing a claimant's residual functional capacity, the ALJ is required to consider his ability to meet the physical, mental, sensory and other requirements of work. 20 C.F.R. §§ 404.1545(a)(4), 416.945(a)(4).

[6] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b), 416.967(b).

and folding machine operator. (R. at 30). Accordingly, the ALJ found that Knippen is not disabled within the meaning of the Act. (R. at 31).

## III. Standard of Review

The Court may not undertake a de novo review of the Acting Commissioner's decision or re-weigh the evidence of record. Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190-91 (3d Cir. 1986). Instead, judicial review is limited to determining whether the Acting Commissioner's decision is supported by substantial evidence. See 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."); Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988) (internal quotation marks and citation omitted). As long as the Acting Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." Stunkard v. Sec'y of Health & Human Servs., 841 F.2d 57, 59 (3d Cir. 1988); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot,

considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Social Security Administration ("SSA"), acting pursuant to its legislatively delegated rulemaking authority, promulgated a five-step sequential evaluation process to determine whether a claimant is "disabled" within the meaning of the Act. The ALJ must assess: (1) whether the claimant currently is engaged in substantial gainful activity; (2) if not, whether he has a severe impairment; (3) if so, whether his impairment meets or equals the criteria of a listing in Appendix 1; (4) if not, whether the claimant's impairment prevents him from performing his past relevant work; and (5) if so, whether the claimant can perform any other work, in light of his age, education, work experience and residual functional capacity. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). If the claimant is found disabled or not disabled at any step, further inquiry is unnecessary. Id. Factual findings pertaining to all steps of the sequential evaluation process are subject to judicial review under the "substantial evidence" standard. McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360-61 (3d Cir. 2004).

In conducting the required evaluation, the ALJ must do more than simply state factual conclusions. Stewart v. Sec'y of Health, Educ. & Welfare, 714 F.2d 287, 290 (3d Cir. 1983). Rather, she must make specific findings of fact to support her ultimate findings. Id. In doing so, the ALJ must specify the reasons for her decision and provide adequate explanation for disregarding or rejecting evidence. Cotter v. Harris, 642 F.2d 700, 704-705 (3d Cir. 1981).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. Securities & Exch. Comm'n v. Chenery Corp., 318 U.S. 80, 87 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record

discloses that its action was based."). The Third Circuit Court of Appeals has recognized the applicability of this rule in the Social Security disability context. Fargnoli v. Massanari, 247 F.3d 34, 44 n.7 (3d Cir. 2001) (citing Chenery, 318 U.S. at 87). Thus, this Court's review is limited to the four corners of the ALJ's decision. Cefalu v. Barnhart, 387 F. Supp. 2d 486, 491 (W.D. Pa. 2005).

**IV.     Discussion**

Knippen challenges the ALJ's findings at step 5 of the sequential evaluation process. According to Knippen, the ALJ's determination that he retains the residual functional capacity to perform work which exists in the national economy is not supported by substantial evidence for the following reasons: (1) the ALJ improperly evaluated his credibility; (2) the ALJ improperly considered and weighed his treating physician's opinion; and (3) the ALJ mischaracterized certain evidence of the record. For reasons discussed below, each of these arguments lacks merit.

**A. The ALJ Properly Evaluated Knippen's Credibility.**

Knippen contends that the ALJ improperly "diminished" his credibility by relying on his ability to perform various daily activities. (ECF No. 16 at 15-16). Knippen also asserts that the ALJ's credibility analysis was flawed because she considered his desire to re-enter the work force. Id. at 16-17.

As an initial matter, the ALJ evaluated Knippen's credibility as required by the Regulations. The ALJ considered all of the relevant evidence in the record, which included Knippen's own statements about his symptoms and limitations, the extent of his treatment, his daily activities, the medical evidence of record and the opinions of physicians who treated and examined him. See 20 C.F.R. §§404.1529(c)(1)-(c)(3), 416.929(c)(1)-(c)(3). The ALJ then

considered the extent to which Knippen's alleged functional limitations reasonably could be accepted as consistent with the evidence of record and how those limitations affect his ability to work. See id. §§404.1529(c)(4), 416.929(c)(4). The ALJ concluded that the objective evidence is inconsistent with Knippen's allegation of total disabling limitations, and thus determined that his statements concerning his pain and limitations were not entirely credible. (R. at 24, 28). The Court finds that the ALJ adequately explained the basis for her credibility determination, (R. at 24-29), and is satisfied that such determination is supported by substantial evidence. See Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 433 (3d Cir. 1999) (an ALJ may reject the claimant's subjective testimony if she does not find it credible so long as she explains why she is rejecting the testimony).

With respect to Knippen's specific credibility argument, it was entirely proper for the ALJ to consider his daily activities. See 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i) (specifying that a claimant's daily activities are a factor to consider in evaluating his symptoms and determining the extent to which they limit his capacity for work). Although "[d]isability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity," Smith v. Califano, 637 F.2d 968, 971 (3d Cir. 1981), it is nonetheless appropriate for the ALJ to consider "the number and type of activities" in which the claimant engages. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002). Here, the ALJ observed that Knippen was able to use a computer, shop, operate a motor vehicle, travel out of state to help his son,[7] and perform

---

[7] Knippen incorrectly argues that the ALJ "punished" him for traveling to Illinois on one occasion. (ECF No. 16 at 17). To the contrary, the ALJ noted that Knippen was able to travel to help his son, but she did not assign special weight to his ability to do so, and her decision makes clear that she certainly did not "punish" him because of it. (R. at 28). It was not improper for the ALJ to note Knippen's ability to travel when considering his activities of daily living in the overall context of the credibility analysis. See Ortega v. Comm'r of Soc. Sec., 232 F. App'x 194, 198 (3d Cir. 2007) (substantial evidence supported ALJ's finding that claimant's subjective complaints were not entirely credible where he lived alone, took care of his basic needs, used public transportation, visited friends and traveled to Florida to visit family).

household repairs and chores, including yard work and shoveling snow, which are activities inconsistent with Knippen's allegation of totally disabling limitations. (R. at 28, 29). The ALJ's decision makes clear that she considered Knippen's ability to engage in these daily activities in conjunction with the record as a whole, and the outcome here did not hinge on his daily activities or any one particular factor in isolation.

Finally, it was not improper for the ALJ to observe that a treatment record stated Knippen was preparing to re-enter the work force, which suggested "he believed himself capable of working." (R. at 28, 801). Knippen contends that the ALJ "diminished" his credibility because he "wanted" to re-enter the work force and that his "desire" to do so should not factor against his credibility. (ECF No. 16 at 16). To be clear, the June 29, 2015, treatment record to which the ALJ referred states that Knippen was "getting ready to re-enter the work force." (R. at 801). The statement indicates that Knippen had more than a mere "want" or "desire" to return to work, but rather an intent to do so. It stands to reason that one who is "getting ready" to do something thinks he is capable of doing it, thus it was not unreasonable for the ALJ to conclude that Knippen "believed himself capable of working." (R. at 28). Nevertheless, a fair reading of the ALJ's opinion makes clear that she did not rely on this factor alone, but only noted it as a piece of her comprehensive credibility analysis. For this reason, and those previously discussed, the ALJ's credibility determination, including her consideration of Knippen's daily activities, was wholly appropriate and consistent with the Regulations.

### B. The ALJ Properly Considered the Opinion of His Treating Physician.

Knippen summarily argues that the ALJ also improperly relied on his ability to perform a wide range of activities in rejecting the opinion statement of his treating physician, Dr. Susan

9

Deakin.[8] (ECF No. 16 at 15). Contrary to Knippen's characterization, the ALJ did not reject Dr. Deakin's opinion solely on that basis. Rather, the ALJ gave the opinion limited weight because it was inconsistent with the medical record, as well as his ability to perform a wide range of activities. (R. at 29). As already discussed, it was entirely appropriate for the ALJ to consider Knippen's daily activities in the overall assessment of his claim, and the ALJ otherwise properly considered and weighed Dr. Deakin's opinion for the reasons explained below.

On August 30, 2014, Dr. Deakin completed a form report entitled "Physical Residual Functional Capacity Questionnaire" (hereinafter, the "August 2014 Report"). (R. at 638-42). Dr. Deakin indicated, <u>inter alia</u>, that Knippen can stand and/or walk for less than two hours and sit for two hours in an eight-hour workday, he can occasionally lift ten pounds, he has limited ability to perform various postural maneuvers and limited ability to use his hands and arms to reach or perform fine or gross manipulations, he needs to shift positions at will from sitting to standing or walking, and he must avoid certain environmental irritants. (R. at 640-42). Dr. Deakin predicted that Knippen would be absent from work more than four days per month. (R. at 641). The ALJ determined that Dr. Deakin's opinion of Knippen's physical capabilities was entitled to only limited weight because it was inconsistent with the medical record as a whole, as well as Knippen's ability to perform a range of daily activities. (R. at 29).

A treating physician's opinion is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the

---

[8] The totality of Knippen's argument concerning the ALJ's treatment of Dr. Deakin's opinion is as follows: "The ALJ both diminished Plaintiff's credibility and rejected Dr. Deakin's opinion statement because of what she purported to be 'a wide range' of activities." (ECF No. 16 at 15). Knippen then stated, "[b]ased on Plaintiff's supposed 'wide range of household chores' the ALJ chose to give only 'limited weight' to Plaintiff's treating doctor's opinion." <u>Id.</u> at 17. Knippen provided no additional support for his position that the ALJ improperly considered and weighed Dr. Deakin's opinion, nor did he specify any additional functional limitations that are purportedly warranted by her opinion or treatment records.

other substantial evidence of record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Under this standard, the ALJ properly gave limited weight to Dr. Deakin's opinion.

The record contains Dr. Deakin's treatment notes from February 14, 2014, through November 25, 2015. (R. at 572-80, 585-95, 606-10, 808-10, 813-14, 821-22, 834-36, 914-15, 923-25). Dr. Deakin examined Knippen five times prior to issuing her opinion on the August 2014 Report. (R. at 572, 576, 585, 587, 606). On four occasions, Dr. Deakin found that Knippen's gait and station were normal, he required an injection for his left shoulder on one visit, but otherwise Dr. Deakin did not document any significant problems from a musculoskeletal standpoint. (R. at 574, 578, 580, 589, 594). Once prior to the August 2014 Report, Dr. Deakin found that Knippen's gait and station were abnormal and he had left shoulder and knee tenderness, but she treated those issues conservatively with medication. (R. at 609). Dr. Deakin's relatively benign findings prior to the August 2014 Report are inconsistent with her opinion that Knippen was significantly limited in his ability to sit, stand, walk and use his hands and arms, as well as her prediction that Knippen would miss work four days per month. (R. at 640-41). As the ALJ recognized, a treating provider's opinion may be entitled to controlling weight if her conclusions "are consistent with the longitudinal medical record [but] [h]ere, that consistency is lacking." (R. at 29). After reviewing the record, the Court finds that the ALJ correctly gave limited weight to Dr. Deakin's opinion based, in part, upon its inconsistency with her own treatment notes. See 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) (consistency with the record as a whole is an appropriate factor to consider in evaluating medical opinion evidence).

Despite giving Dr. Deakin's opinion limited weight, the ALJ accounted for her findings that were supported by the record. In particular, the ALJ incorporated into the RFC Finding limitations reflecting Dr. Deakin's opinion that Knippen is capable of only low stress work, that

11

he should avoid exposure to environmental irritants because of his asthma, and that he needs unscheduled breaks for five minutes every hour. (R. at 24, 639, 640, 642). In addition, to the extent Dr. Deakin found that Knippen had shoulder problems, the RFC Finding restricted him from bilateral overhead reaching. (R. at 23, 578, 609).

In sum, the Court finds that the ALJ properly evaluated Dr. Deakin's opinion and concludes that her decision to give it limited weight is supported by substantial evidence of record.[9]

### C. **The ALJ Did Not Mischaracterize Certain Evidence of Record.**

Knippen contends that the ALJ's decision is not supported by substantial evidence because she mischaracterized the record concerning his obesity, elbow pain and participation in physical therapy, as well as the opinion of the consultative psychological examiner. (ECF No. 16 at 12-14). Knippen is incorrect on each count.

According to Knippen, the ALJ inaccurately observed that "[t]he records do not reveal suggestions of aggressive weight loss recommendations or discussion of surgical intervention [which] suggests that his physicians have not viewed the condition as causing substantial restrictions on [his] functional abilities." (ECF No. 16 at 12-13 quoting R. at 25). Knippen points out that Dr. Deakin strongly encouraged weight loss, stating it was imperative that he lose weight given his knee osteoarthritis and hypertension. (R. at 809, 812). Knippen therefore argues that

---

[9] Knippen summarily claims that the ALJ must have relied on her lay interpretation of the record concerning the physical components of the RFC Finding because she also declined to adopt the opinion issued by the state agency non-examining medical consultant. (ECF No. 16 at 17). The ALJ gave little weight to the medical consultant's opinion that Knippen could perform medium work with no additional restrictions because it was not consistent with the overall record. (R. at 29). The ALJ's treatment of the medical consultant's opinion benefitted Knippen because the ALJ's RFC Finding restricted him to light work and included additional restrictions to accommodate Knippen's physical functional limitations resulting from his asthma, arthritis and knee and back pain. (R. at 29). Moreover, the decision makes clear that the ALJ did not make the RFC Finding or evaluate any aspect of Knippen's claim by relying on her own lay interpretation of the evidence, but rather based her decision upon a thorough consideration of the record as a whole. (R. at 24-29).

the ALJ incorrectly assumed that his physicians did not view his obesity as causing restrictions. (ECF No. 16 at 13).

Knippen did not accurately describe the ALJ's treatment of his obesity. The ALJ acknowledged that she is required to consider the effect of obesity on a claimant's entire body, including potential exertional and mental restrictions. (R. at 25). The ALJ explained that Knippen's obesity contributed to the development of diabetes and hypertension, but his weight remained stable. (R. at 25). The ALJ then made the observation referenced by Knippen, but she further stated, "[r]egardless, his obesity is considered as an exacerbating factor of other conditions, including arthritis and hypertension. The residual functional capacity . . . was reached while considering those potential exacerbations." (R. at 25). Therefore, the ALJ considered the overall effect of Knippen's obesity in crafting the RFC. Further, despite Knippen's criticism of the ALJ for inaccurately assuming that his physicians did not view his obesity as causing restrictions, Knippen failed to specify any functional limitations or restrictions which they purportedly identified.

Knippen also argues that the ALJ improperly assumed that his discharge from physical therapy in December 2014, indicated he could perform a wide range of activities. (ECF No. 16 at 13). Knippen omitted the fact that the ALJ also stated he was given a "comprehensive home exercise program" when he was discharged which, the ALJ observed, "strongly indicat[ed] that his providers believed him capable of a wide-range of activities." (R. at 26). Moreover, Knippen incorrectly claims that the ALJ ignored that he was re-admitted to physical therapy after December 2014. (ECF No. 16 at 13). The ALJ acknowledged Knippen's subsequent physical therapy by referencing a notation that he significantly improved after receiving physical therapy in April 2015. (R. at 26). The ALJ's decision makes clear that she did not assign special significance to

Knippen's participation in physical therapy, or his discharge from it, but rather considered it as one of many factors in the overall analysis of his claim. See 20 C.F.R. §§ 404.1529(c)(3)(v), 416.929(c)(3)(v) (specifying that a claimant's treatment for the relief of pain or other symptoms is a relevant consideration).

Knippen next takes issue with the ALJ's observation that his elbow pain was not as limiting as he alleged. (ECF No. 16 at 14). To be clear, the ALJ discussed Knippen's history of arthritis in his elbows, noted that a physical consultative examination revealed some limitation in range of motion, but observed that later treatment records documented an improvement in the range of motion. (R. at 26). The ALJ also stated that Knippen's elbows only needed "observation," thus any problem with his elbows "[was] not as limiting as alleged." (R. at 26). The ALJ's statement that Knippen's elbow problem "[was] not as limiting as alleged" indicates that the ALJ concluded there was some limitation, just not the degree claimed by Knippen. Although Knippen complains that the ALJ ignored subsequent physical therapy records that referenced treatment for elbow pain, (ECF No. 16 at 14), the Acting Commissioner is correct that the salient inquiry is not whether Knippen was treated for elbow pain, but rather whether the evidence of record establishes that he has functional limitations as a result of it. (ECF No. 21 at 7). To the extent that Knippen is limited because of elbow problems, the ALJ accounted for it by precluding him from bilateral overhead reaching. (R. at 23, 27). Notably, Knippen does not specify any additional limitations related to his elbows that he claims the ALJ should have included in the RFC Finding.

Finally, Knippen asserts that the ALJ misinterpreted a comment made by Dr. Stanley Nadulek, who performed a consultative psychological evaluation of Knippen. (R. at 553-65). According to Knippen, the ALJ interpreted Dr. Nadulek's observation that he had a "very exaggerated and histrionic style to his presentation" as "strongly [indicating] that [Dr. Nadulek]

did not find the claimant's allegations to be fully credible." (ECF No. 16 at 14 citing R. at 28). According to Knippen, Dr. Nadulek did not draw any such conclusion. (ECF No. 16 at 14).

Regardless of whether the ALJ correctly interpreted Dr. Nadulek's reference to Knippen's histrionic style, Knippen completely ignores the fact that the ALJ gave Dr. Nadulek's opinion substantial weight. (R. 28). However, the ALJ determined that Knippen had a greater degree of limitation in the area of concentration, persistence and pace than found by Dr. Nadulek and consequently included in the RFC Finding a restriction to simple, routine and repetitive work that is performed in a stable environment where the work place and process remains generally the same each day. (R. at 24, 29). Therefore, Knippen's argument concerning Dr. Nadulek is without merit.

## V.     Conclusion

For the foregoing reasons and based upon review of the record as a whole, the Acting Commissioner's decision that Knippen is not disabled with the meaning of the Act is supported by substantial evidence. Accordingly, Knippen's motion for summary judgment (ECF No. 15) will be denied, the Acting Commissioner's motion for summary judgment (ECF No. 20) will be granted, and the Acting Commissioner's decision will be affirmed.

An appropriate order follows.

_____
Lisa Pupo Lenihan
United States Magistrate Judge

Dated: January 31, 2018

cc:   All counsel of record via CM/ECF